ATLANTIC CARRIERS, Inc.,
Libelant,

v.

UNITED STATES of America,
Respondent.

TRAMP CARGO CARRIERS, Inc., as
Owner of THE LIBERTY BELL,
Libelant,

v.

UNITED STATES of America,
Respondent.

United States District Court
S. D. New York.

April 19, 1955.

Rehearing Denied May 17, 1955.

2

Zock & Petrie, New York City, for libelant Atlantic Carriers, Inc. and Tramp Cargo Carriers, Inc. Francis J. O'Brien, New York City, of counsel.

J. Edward Lumbard, U. S. Atty., New York City, for respondent, Benjamin H.

Berman, Atty., Dept. of Justice, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

This suit is brought, pursuant to the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., for an alleged breach of a charter party.[1] On April 6, 1953, the steamship John C., a vessel owned by the libelant was chartered to the respondent and was redelivered to libelant in allegedly damaged condition on August 8, 1954.

By exceptive allegations the respondent now raises a provision in the charter—a "disputes clause"—as a complete bar to the suit. The provision, Article 32 of the Charter, provides that any unsettled dispute "concerning a question of fact arising under this contract" shall be determined by the Government "Contracting Officer", with right of appeal to "the Secretary". Their decisions "shall be final and conclusive". Libelant concedes that the disputes clause is normally a bar to the prosecution of this suit and that it is required to pursue its administrative remedies before suit may be brought. "But [the] Article * * * is something more than a dead letter to be revived only at the convenience or discretion of the contractor. It is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. [The] Article * * * is controlling as to all disputes 'concerning questions arising under this contract' unless otherwise specified in the contract. It creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. * * * This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters

arising under the contract. * * * And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted *before* a contractor *can be heard to complain in a court.*" United States v. Joseph A. Holpuch Co., 1946, 328 U.S. 234, 239, 66 S.Ct. 1000, 1003, 90 L.Ed. 1192. See also United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256; United States v. Blair, 1944, 321 U.S. 730, 734, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Callahan Walker Construction Co., 1942, 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49; United States v. Wessel, Duval & Co., D.C.S.D.N.Y.1953, 115 F.Supp. 678, 685.

The libelant is now in the process of presenting its claims to the contracting officer. The libelant has not pressed the instant suit, and it has represented to the Government and to the Court that it will not require the respondent to answer or otherwise plead until the administrative processing is completed and that "the libel was filed for protective purposes only"—i. e., to avoid the bar of the two year statute of limitations of the Suits in Admiralty Act, 46 U.S.C.A. § 745.

Although the disputes clause would normally be a bar to the institution of a suit until the completion of the administrative process, the libelant urges that the libel should remain on the docket because its administrative remedy may prove so dilatory that it may be time barred from later bringing suit to review the administrative determinations of fact and to press contentions of law. The basis in the instant action for threatened inadequacy of the administrative remedy, appearing in the affidavit of libelant's Secretary-Treasurer, is that, predicated upon the average time the agency has taken to currently process claims in relation to the number of claims having precedence over libelant's claim, its

---

1. Atlantic Carriers and Tramp Cargo Carriers are companion cases and they raise identical issues upon this motion.

To avoid confusion, only Atlantic Carriers will be discussed in this Opinion.

claim "will not be processed until sometime in January of 1956." After this date, other steps must allegedly be taken to complete the administrative process.

■ There is authority for the view that the inadequacy by time delay of an administrative remedy permits resort to the courts. Southeastern Oil Florida, Inc., v. United States, Ct.Cl.1953, 115 F.Supp. 198; cf. Eastern S. S. Lines v. United States, 1953, 112 F.Supp. 167, 176, 125 Ct.Cl. 422; see United States v. Holpuch Co., 328 U.S. 234, 240 (1946); United States v. Blair, 1944, 321 U.S. 730, 736, 64 S.Ct. 820, 88 L.Ed. 1039. Where the threat of having the statute of limitations permanently foreclose judicial review is imminent the injured party should be permitted to at least file, if not prosecute, his libel in the court. In Wessel, Duval & Co. v. United States, D.C.S.D.N.Y.1954, 126 F.Supp. 79, 81, Judge Noonan permitted the filing of a protective libel "a few days before [the statute of limitations] would have precluded the libelant from ever bringing the action."

■ Our inquiry must, therefore, be directed to the statute of limitations. The Suits in Admiralty Act requires that the suit be brought within two years after "the cause of action arises." 46 U.S.C.A. § 745. The libelant assumes that its cause of action arose after its original delivery of the vessel on April 6, 1953 but before respondent's redelivery to it on August 8, 1954.[2] On the other hand, respondent appears to urge that the cause of action will not arise until the administrative process becomes final in view of the statute enacted into law on May 11, 1954, which expressly provides for judicial review of administrative decisions pursuant to disputes clauses. 41 U.S.C.A. § 321. The legislative history of the review statute clearly indicates that the statute was not intended to alter limitations statutes otherwise applicable. 2 U.S.Code Congressional and Administrative News, pp.

2191, 2196, 83d Cong. 2d Sess.1954. The statute of limitations began running at the time the cause of action for breach of the charter party arose; the administrative process does not even toll the statute. United States v. Wessel, Duval & Co., D.C.S.D.N.Y.1953, 115 F.Supp. 678, 685. On the other hand, the cause of action did not arise upon the original delivery in June, 1953 since the alleged damage relates to the use of the vessel during the period the vessel was chartered. The damage alleged appears to be somewhat greater than that caused by normal wear and tear but less than that caused by collision or by another single identifiable event. In other words, the alleged damage was apparently of a cumulative type the full extent of which was probably not measured by the libelant until the joint survey of the vessel was conducted by the parties preceding its redelivery in August, 1954. Moreover, if the charter included the standard provisions imposing a contractual obligation upon the Government upon redelivery to restore the vessel to good condition itself or to pay the cost of such restoration or its value, See Eastern S. S. Lines v. United States, supra, then the contractual cause of action for breach of the charter (as opposed to negligence) would arise only after the Government refused or anticipatorily indicated its refusal to comply with its obligation. Under either theory, the threat of the bar of the statute of limitations is not, at this time, imminent. Additionally, libelant's mere predictions as to when the administrative process will be completed, based upon the number of claims (apart from the differences in their complexity) processed in a three month period, do not constitute "clear evidence that the appeal procedure is inadequate". Joseph A. Holpuch Co., supra, 382 U.S. at page 240, 66 S.Ct. at page 1003.

The libel will be dismissed with leave to libelant to subsequently refile it upon a showing of substance indicating ad-

---

2. In Tramp Cargo Carriers the delivery to the Government took place on April 25, 1952; redelivery was effected on April 29, 1954.

ministrative inadequacy or imminent preclusion of the action by reason of the statute of limitations. Settle order.

## On Motion for Rehearing.

▓▓▓▓ Libelants now urge that it is unnecessary to thrust upon them the burden of showing "administrative inadequacy or imminent preclusion of the action by reason of the statute of limitations" before they may refile their libels. They point up the impracticality of dismissing their libels and requiring them to refile them when the administrative process can be equally protected from judicial interference by merely staying the court suits pending final administrative determination of their claims.

Libelants fail to appreciate the thrust of the Court's original Opinion. The effect of a disputes clause is to deprive the courts of *jurisdiction* of any claim [1] covered by it, until the administrative process has been completed. At that time the courts have jurisdiction of the claim only if there is an allegation in the complaint that the administrative decision is "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." 41 U.S.C.A. § 321.

▓▓▓▓ The only gloss upon the rule denying jurisdiction to the courts before completion of the administrative fact-finding process is that of clear inadequacy of the administrative remedy. See Wessel, Duval & Co. v. United States, D.C.S.D.N.Y.1954, 126 F.Supp. 79; Manderscheid v. United States, D.C.N.D.Cal. 1950, 88 F.Supp. 232 (libel filed two days before statute of limitations ran); cf. Moran Towing & Transportation Co. v. United States, D.C.S.D.N.Y.1944, 56 F. Supp. 104, 106 ("possibility * * * that the statute of limitations may run" —not a disputes clause case). As indicated in the main Opinion, such inadequacy has not been shown to exist in the instant cases.

The motions for reargument are denied. So ordered.

---

1. A question of "law" is not a "claim" of which the court acquires immediate jurisdiction before the administrative fact-finding process is completed. Questions of law usually arise only after the disputed questions of fact relegated to administrative determination have been resolved. If a claim arising under a disputes clause involves *solely* questions of law, then immediate jurisdiction may properly be held to be present.